# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| THOMAS KORULA, | ) | |
| | ) | |
| Plaintiff, | ) | **AMENDED COMPLAINT** |
| | ) | |
| v | ) | Civil Action No. 20-3788 |
| | ) | |
| JOHN DOES 1-12, | ) | Demand for Jury Trial |
| | ) | |
| Defendants. | ) | |

## VERIFIED AMENDED COMPLAINT

THOMAS KORULA ("Plaintiff"), by and through his attorneys, BARNES LEGAL P.C., for its Complaint against JOHN DOES 1-12 ("Defendants", and each a "Defendant"), alleges, on knowledge as to his own actions, and otherwise upon information and belief, as follows:

## INTRODUCTION

1. For over two years, Plaintiff has been subject to a persistent, anonymous campaign to damage him professionally and to cause him emotional distress. This campaign has resulted in significantly reducing his income and has had a profoundly negative impact on his professional, civic and personal life. Over the course of this anonymous harassment campaign, Plaintiff has been repeatedly accused of nonconsensual sexual advances, rape and harassment. These false accusations have provided salacious details designed to evoke an emotional response in recipients, without identifying or supporting information as to the alleged victim. Furthermore, the accusations have provided no specific dates, times or other information that would make it possible to refute them. Moreover, these accusations have come at a time of heightened sensitivity to these types of accusations, and have therefore been taken very seriously by the recipients. Although each anonymous communication has alleged different false facts and used

different false identifiers, there is enough consistency among them that Plaintiff believes that this campaign is the work of either a single individual or a group of individuals working together.

## PARTIES

2. Plaintiff is a natural person, citizen and a resident of the State of New York.

3. Defendants are unknown individuals, who are, upon information and belief, citizens of various States of the United States other than New York and/or citizens of a foreign state who are not domiciled in the State of New York, but otherwise with limited identifying information.

## JURISDICTION AND VENUE

4. This is a civil action for damages and injunctive relief arising under the law of the State of New York. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(1)–(2).

5. Upon information and belief, there is complete diversity of citizenship between Plaintiff and Defendants.

6. The amount in controversy exceeds $75,000.

7. This Court has personal jurisdiction over Defendants pursuant to N.Y. CPLR § 302(a)(1) and N.Y. CPLR § 302(a)(3).

8. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) because Defendants' tortious conduct was specifically targeted at Plaintiff while Plaintiff was a resident of this district and the intended damage occurred in this district.

## FACTS

9. Plaintiff is an executive coach, consultant, entrepreneur and non-profit director who primarily conducts these activities from his home office in Brooklyn, New York.

10. Defendants have conducted a systematic campaign of anonymously contacting individuals and organizations that Plaintiff is publicly associated with.

11. Defendants have sent false, anonymous messages about Plaintiff to at least the following entities: TechCrunch Inc. ("TechCrunch"), Reboot.io, Inc. ("Reboot"), The Interdependence Project ("Interdependence") and SuperCulture Plus LLC ("SuperCulture").

12. The false anonymous messages regarding Plaintiff have been made through public web contact forms of these organizations.

13. Defendants also impersonated Plaintiff when submitting a web contact form to WaldenApp that itself constituted inappropriate and harassing conduct, including salacious comments made concerning the founder of WaldenApp.

14. To the extent Plaintiff has been able to obtain copies of the materials submitted to these organizations, no working email or other information identifying Defendants has been provided.

## TECHCRUNCH

15. Starting from approximately May 1, 2010, Plaintiff was the initial co-organizer and emcee of the TechCrunch's "TechCrunch Disrupt" hackathon, and he continued to serve in this role until January 31, 2018.

16. On or about January 30, 2018, upon information and belief, Defendant Doe 1 submitted an anonymous false statement to TechCrunch alleging that Plaintiff had sexually harassed a woman at a TechCrunch event in 2017.

17. On January 30, 2018, TechCrunch sent Plaintiff an email in which TechCrunch stated that Plaintiff had violated TechCrunch's anti-harassment policy.

18. On January 30, 2018, Plaintiff sent TechCrunch an email in which Plaintiff denied the allegations and represented that he never engaged in any behavior that could constitute a violation of the TechCrunch harassment policy.

19. On January 31, 2018, TechCrunch sent Plaintiff an email in which TechCrunch acknowledged Plaintiff's response, but refused to provide any additional information.

20. On February 22, 2018, Plaintiff's counsel sent TechCrunch a request to provide any information that TechCrunch had regarding the false accusations.

21. On March 1, 2018, counsel for TechCrunch refused in an email to Plaintiff's counsel to comply with the request. To date, Plaintiff has not been able to obtain the details of this complaint.

22. Starting from the initial complaint, TechCrunch severed all ties with Plaintiff and Plaintiff was permanently barred from all TechCrunch events.

23. Plaintiff lost a substantial stream of income from anticipated TechCrunch events because of Defendants Doe 1's actions.

**REBOOT**

24. Plaintiff offered professional facilitation and coaching services as an independent contractor through Reboot in New York, New York from May 30, 2017 through January 17, 2020.

25. On or about January 23, 2018, upon information and belief Defendant Doe 2, providing the non-working email address of anon@fornow.com, made the following false statement targeted at Plaintiff through Reboot's web contact form: "One of your coaches assaulted me at a Hackathon event in NYC last May. I met T[homas] at Pier 36 and initially he was very friendly. After finding me again at the end of a long day he made a supportive

comment then put his hands on my rear end and asked if I needed a place to spend the night. It took months for me to have the courage to tell the organizers what happened. I do not seek attention but I want you to know my story."

26. On February 1, 2018, Defendant Doe 3, providing the email address of newyorker@hotmail.com, made the following false statement apparently targeted at Plaintiff on the Reboot web contact form: "One of your male coaches is under active investigation by the NYPD for sexual assault. Shameful that you are full of such scumbags."

27. On February 15, 2018, Defendant Doe 4, providing the email address of msanon@uc.bekeley.edu, made the following false statement targeted at Plaintiff on the Reboot web contact form: "My name is Jane and I was a UC undergrad who met one of your coaches at a tech event in 2014. Two drinks later he put his hands in my pants and tried to make out with me. I hope T[homas] has changed his behavior and stopped speaking like a Buddhist monk and acting like a sexual predator. The fact you have him on your staff makes me worried for women who seek out professional coaching."

28. On March 23, 2018, Defendant Doe 5, providing the email address warningwomen@gmail.com, made the following false statement targeted at Plaintiff on the Reboot web contact form: "T[homas] Korula has been accused of rape, sexual predatory behavior and bullying. I intend to find the contact information for as many of the companies and individuals that work with Reboot and write them a letter about your colleague so they can decide if working with you makes sense. I also intend to directly contact each woman who works @ Reboot directly to share intimate details about what happened to me and how I was taken advantage of in a professional setting. I have a responsibility to share my story, to protect women and to inform others who are at risk."

29. As a result of Defendants Doe 2-5's false accusations and threats to contact Reboot's clients, on March 24, 2018, Reboot removed Plaintiff's biography from its website and suspended its relationship with Plaintiff.

30. On March 28, 2018, Defendant Doe 6, providing the email address aruna@anycstartup.com, made the following false statement targeted at Plaintiff on the Reboot web contact form: "I've never worked with a coach and heard it could help me. An investor connected me with one of your team members to learn more. When we spoke I mentioned your services sound priced for a later stage company. I was offered a invite to participate in a upcoming bootcamp and it came across that the offer included a option to share boarding with him if my startup needed a discount! If you want to fill your events I suggest you work smarter to make women founders feel less uncomfortable participating in your events."

31. On November 20, 2019, Defendant Doe 7, providing the email address of preferably@notnow.com, upon information and belief, made the following false statement targeted at Plaintiff on the Reboot web contact form: "I attended NYU as an undergrad. I took a class in a grad program and afterwards was asked on a date by T[homas] Korula. He took me to a wine bar, got me to drink too much and I woke up at his house with my clothes off. I was uncomfortable with what occurred and believe I was raped so I reported him to my advisor because he was a visiting professor in some capacity. I never found out what happened. Other women at school told me they had heard bad things about him but nothing like this. It was a long time ago and I thought I was over it. I am exploring professional coaching to help me get unstruck at work. I saw his professional cv on your website. This brought it all back like it was yesterday and makes me angry, hurt, upset and disappointed all over again."

32. Plaintiff's bio was restored to the Reboot website on January 18, 2019, but thereafter Plaintiff received far fewer referrals from Reboot than Plaintiff had received before, and fewer referrals other consultants with similar backgrounds. On information and belief, this was the result of Reboot being reluctant to refer coaching clients to him as a result of the Defendant Does 2-7's actions.

## THE INTERDEPENDENCE PROJECT

33. From January 11, 2015 to present, Plaintiff has served as a director of Interdependence, a non-profit organization promoting meditation and mindfulness.

34. On April 18, 2018, Defendant Doe 8, providing the email address anon@hotmail.com, made the following false statement targeted at Plaintiff on the Interdependence web contact form: "Please ask your cofounder T[homas] why he thought it was ok to sexually assault me at an event."

35. On April 27, 2018, Defendant Doe 9, providing the email address wanttobe@anonymous.org, made the following false statement targeted at Plaintiff on the Interdependence web contact form: "Kim, I have concerns about continuing to associate the Interdependence Project with T[homas] Korula. I've heard about sexual abuse allegations against him and it worries me. I am not sure why an organization like ours continues to align with someone who could threaten our safety and act in ways that violate our ethics. Thank you for listening."

36. From approximately April 24, 2018 to June 3, 2018 Interdependence conducted an internal investigation into these accusations. During this time, Interdependence barred Plaintiff from participating in Interdependence activities.

37. On June 21, 2018, the Board Secretary of Interdependence informed Plaintiff that the Interdependence investigation had not been able to substantiate any of the accusations.

## SUPERCULTURE

38. On April 3, 2020, Plaintiff founded SuperCulture, an organization that provides professional training and coaching services in Brooklyn, New York.

39. On or about April 28, 2020, Defendant Doe 10 provided the email address [Plaintiff]@rapedme.girl to the open subscription form to receive "more information" about SuperCulture.

40. In connection with this subscription attempt, Plaintiff was able to collect what appears to be a valid residential IP address in California that was used by Defendant Doe 10.

41. On September 25, 2020, Defendant Doe 11 provided the email address do@you.rape to the open subscription form to receive "more information" about Plaintiff's Coaching Company.

42. In connection with this subscription attempt, Plaintiff was able to collect what appears to be a valid residential IP address in California that was used by Defendant Doe 11.

## WALDENAPP

43. On August 2, 2020, Defendant Doe 12 submitted a web form response to WaldenApp, a company that provides software for streaming executive coaching services.

44. When completing the web form, Defendant Doe 12 impersonated Plaintiff, using Plaintiff's name, email address and website.

45. In the comments of the web form, Defendant Doe 12 made inappropriate and harassing sexual comments concerning the founder of WaldenApp.

46. Plaintiff received a justifiably angry email from the founder of WaldenApp, who did not appreciate the comments.

47. Plaintiff was able to convince the founder of WaldenApp that he did not submit the web form.

48. The founder of WaldenApp agreed to preserve the IP addresses collected in connection with the submission of the web form.

## FIRST CAUSE OF ACTION
## DEFAMATION

49. Plaintiff readopts paragraphs 1 through 48.

50. Defendants willfully published false statements on several web contact forms concerning Plaintiff which have caused harm to Plaintiff's business relationships and reputation.

51. The published false statements and false accusations include, without limitation, that Plaintiff assaulted Defendant Plaintiff committed rape, Plaintiff is a sexual predator, and that Plaintiff was under a New York Police Department investigation for committing sexual assault.

52. Defendant published these false statements without any authorization or privilege.

53. Defendant's false statements are defamatory per se because they charge Plaintiff with having committed acts of moral turpitude and adversely reflect on Plaintiff's professional reputation.

54. Defendant made the aforementioned false statements with actual malice and with the intent to injure Plaintiff.

55. Defendant's use of uncontactable email addresses, virtual private networks (VPNs) and incorrectly completed web contact forms demonstrate a pre-planned, deliberate, targeted attempt to harm Plaintiff while remaining entirely unreachable; Defendant's conduct is willful and wanton.

56. Defendant's false statements have tarnished Plaintiff's reputation with baseless associations of sexual misconduct and have caused Plaintiff lost income in excess of $75,000.

57. By reason of the foregoing, Defendant has caused, and Plaintiff has suffered, legal damages in an amount to be determined at trial, including compensatory and punitive damages, plus attorneys' fees, costs and expenses.

## SECOND CAUSE OF ACTION
## TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
## TECHCRUNCH

58. Plaintiff readopts paragraphs 1 through 57 as if fully set forth herein.

59. Although Plaintiff did not have a formal contract with TechCrunch, Plaintiff had a long-standing, lucrative relationship with TechCrunch in connection with events and publications sponsored by TechCrunch.

60. Based on the length of their association, Plaintiff had a reasonable expectation that Plaintiff's relationship with TechCrunch would continue indefinitely.

61. Defendant Doe 1 interfered in Plaintiff's relationship with TechCrunch by submitting false complaints of harassment to TechCrunch.

62. Defendant Doe 1 acted with the sole purpose of harming Plaintiff, and used wrongful, dishonest, unfair and improper means to damage Plaintiff's relationship with TechCrunch.

63. As a result of Defendant Doe 1's actions, TechCrunch permanently ended its relationship with Plaintiff, causing loss of income to Plaintiff in excess of $75,000.

64. By reason of the foregoing, Defendant has caused, and Plaintiff has suffered, legal damages in an amount to be determined at trial, including compensatory and punitive damages, plus attorneys' fees, costs and expenses.

# THIRD CAUSE OF ACTION
# TORTIOUS INTERFERENCE WITH PROSPECTIVE ECONOMIC ADVANTAGE
# REBOOT

65. Plaintiff readopts paragraphs 1 through 64 as if fully set forth herein.

66. Plaintiff had an ongoing commercial relationship with Reboot, pursuant to which [Reboot] promoted Plaintiff as a coach, Plaintiff provided coaching services, and Reboot billed coaching clients and shared the proceeds with Plaintiff.

67. Based on the steadily increasing success of Plaintiff's relationship with Reboot prior to January 23, 2018, Plaintiff had a reasonable expectation of that relationship continuing and expanding over time.

68. Defendants Doe 2-7 interfered in Plaintiff's relationship with Reboot by submitting false complaints of harassment and rape to Reboot.

69. Defendants Doe 2-7 acted with the sole purpose of harming Plaintiff, and used wrongful, dishonest, unfair and improper means to damage Plaintiff's relationship with Reboot.

70. As a result of Defendants Doe 2-7's actions, Reboot removed Plaintiff's bio from its web pages from March 24, 2018 to January 18, 2019 and substantially reduced the number of coaching clients it referred to Plaintiff, causing loss of income to Plaintiff in excess of $75,000.

71. By reason of the foregoing, Defendant has caused, and Plaintiff has suffered, legal damages in an amount to be determined at trial, including compensatory and punitive damages, plus attorneys' fees, costs and expenses.

# FOURTH CAUSE OF ACTION
# INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
# ALL DEFENDANTS

72. Plaintiff readopts paragraphs 1 through 71 as if fully set forth herein.

73. In addition to causing economic harm to Plaintiff, Defendants' extreme and outrageous conduct has caused Plaintiff severe emotional distress.

74. Defendants fabricated numerous vivid but false allegations of Plaintiff committing sexual harassment and rape, and then communicated those allegations using false identities to third parties in a manner calculated to cause those third parties to suspect that those allegations are true, conduct which is self-evidently extreme and outrageous.

75. Knowing that these allegations were entirely false, Defendants' either evidently intended or disregarded the substantial probability of causing Plaintiff severe emotional distress.

76. In the case of TechCrunch, at least some colleagues with whom Plaintiff had collaborated for years found the allegations sufficiently credible to cause TechCrunch to cut off all further connections with Plaintiff. The allegations were extremely embarrassing to Plaintiff. Attempting to persuade TechCrunch to restore his previous role was extremely stressful, and Plaintiff is now barred from attending an event that he played a key role in creating. Well beyond the financial harm caused to Plaintiff, this has caused Plaintiff severe emotional distress.

77. In the case of Reboot, although ultimately Plaintiff was able to persuade his colleagues there that he should be reinstated as a coach, the allegations clearly left lingering doubts about Plaintiff and caused Plaintiff enormous embarrassment. The process of persuading Reboot to reinstate him was extremely stressful (and not entirely successful). Well beyond the financial harm caused to Plaintiff, this caused Plaintiff severe emotional distress.

78. Although Plaintiff was ultimately cleared of any wrongdoing as a result of the investigation conducted by Interdependence, the allegations were extremely embarrassing, and the investigation was highly stressful. Well beyond the financial harm caused to Plaintiff, this caused Plaintiff severe emotional distress.

79.     Defendant Doe 11 impersonated Plaintiff when contacting WaldenApp using a web form, and while doing so, directly engaged in the same type of conduct alleged in the other communications.  Because WaldenApp is a part of Plaintiff's professional community, discovering this impersonation caused Plaintiff severe emotional distress. Plaintiff remains distressed because, given the pattern of activity described throughout this Complaint, it is very likely that Defendants have engaged or will engage again in this conduct with respect to other companies and individuals in Plaintiff's professional community, not all of whom will even bother to contact Plaintiff to provide an opportunity to explain himself.

80.     Plaintiff has suffered severe emotional distress, and because of the severe emotional distress caused by Defendants, Plaintiff has sought help from a licensed psychotherapist and an executive coach. Plaintiff has reported symptoms of panic attacks, anxiety, depression, difficulty sleeping, weight gain, inflammation and joint pain to his medical doctor resulting from this extreme emotional distress, and Plaintiff has additionally attempted to address this distress through meditating daily, going on meditation retreats, taking homeopathic remedies and vitamins, undergoing physical therapy, physical training and massage therapy.

81.     By reason of the foregoing, Defendant has caused, and Plaintiff has suffered, legal damages in an amount to be determined at trial, including compensatory and punitive damages, plus attorneys' fees, costs and expenses.

## REQUEST FOR RELIEF

82.     WHEREFORE, Plaintiff demands judgment against Defendants as follows: (a) for actual damages according to proof, (b) for special damages according to proof, (c) for punitive damages of $1,000,000, (d) for a retraction of all allegations to TechCrunch, Reboot and Interdependence, (e) for costs of suit; and (f) for such further relief as the court deems just.

## JURY DEMAND

Plaintiff hereby demands a trial by jury on all claims.

Dated: October 20, 2020					PLAINTIFF THOMAS KORULA

By: _____
Douglas Barnes
Barnes Legal, P.C.
11 Broadway, Suite #615
New York, NY 10004
Telephone: (212) 951-1866
Fax: (212) 951-1866
Email: dbarnes@barneslegal.net

## Verification

Thomas Korula, being duly sworn, declares as follows:

1. I am the Plaintiff identified in the present case, a citizen of the State of New York, United States of America, and a resident of Kings County in the state of New York.

2. I have authorized the filing of the foregoing Verified Amended Complaint

3. I have personal knowledge of myself, my activities, and my experiences, including those set out in the foregoing Verified Amended Complaint, and if called on to testify I would competently testify as to the matters stated herein.

4. I have reviewed the allegations in the Verified Amended Complaint, and to those allegations of which I have personal knowledge, I believe them to be true. As to those allegations of which I do not have personal knowledge, I have relied on the documents and sources identified in the Verified Amended Complaint and I believe them to be true.

5. Executed on __October 20__, 2020.

_____
Thomas Korula